JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Natalie Ray

## DEFENDANTS

Johnson Mark, LLC, Midland Credit Management, Inc., Mathew "Matthew" Phillip Clark, Does 1-20

**(b)** County of Residence of First Listed Plaintiff  **Nueces**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Utah**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kellett & Bartholow, PLLC, 11300 N Central Expy, Suite 301, Dallas, Texas 75243; 214-696-0000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question  *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [x] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1692 et seq. and Texas Finance Code § 392.001 et seq.

Brief description of cause:
Class action against debt collectors in Texas for violating the TDCA and FDCPA

## VII. REQUESTED IN COMPLAINT:

[x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
7/12/25

SIGNATURE OF ATTORNEY OF RECORD
/s/ Karen L. Kellett

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **NATALIE RAY,** | § | |
| | § | |
| Individually, and on behalf of all others similarly situated, | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 2:25-cv-187** |
| | § | |
| **JOHNSON MARK, LLC** | § | **JURY DEMAND** |
| **MATHEW "MATTHEW" PHILLIP** | § | |
| **CLARK (UT ATTY FOR JM LICENSED** | § | |
| **IN TX – "TEXAS MANAGING** | § | |
| **ATTORNEY"), MIDLAND CREDIT** | § | |
| **MANAGEMENT, INC., AND J. DOES 1-** | § | |
| **100,** | § | |
| | § | |
| **Defendants.** | | |

## CLASS ACTION COMPLAINT

This is a class action lawsuit for damages and injunctive relief brought by Plaintiff Natalie Ray, on behalf of herself and all others similarly situated, against Defendants Johnson Mark, LLC ("JM"), Mathew Phillip "Matthew" Clark ("Clark"), Midland Credit Management, Inc. ("Midland"), and unknown corporate debt collector defendants J. Does 1-20 ("Doe") – (collectively, "Defendants") – seeking redress for Defendants' violations of the Federal Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §1692 *et seq*. and the Texas Debt Collection Act ("TDCA"), Texas Finance Code § 392.001 *et seq*.

## I. INTRODUCTION

1.      Debt collectors in the State of Texas are required to maintain a surety bond. Tex. Fin. Code Ann. § 392.101.

2.      The express purpose of this bond is to compensate any person who is damaged by

a violation of the TDCA—that is, to compensate consumers damaged by debt collectors that engage in abusive, unfair or unconscionable collection activities in violation of the TDCA, including but not limited to the use of misrepresentations in the act of collecting debts.  Tex. Fin. Code Ann. § 392.101(b)(1)-(2).

3.      Defendant Johnson Mark (JM) is a debt collector that actively engages in collection activities for a numerous debt buyers in the State of Texas, including Midland Credit Management, Inc. and other debt buyers active in this State (including Does 1-20).

4.      JM failed to maintain a surety bond starting on July 13, 2024.

5.      Notwithstanding the fact that its surety bond had lapsed, Defendant JM continued collection activities on behalf of Midland against Plaintiff after July 13, 2024.

6.      JM also continued debt collection activities on behalf of Midland and other debt buyers, including Does 1-20, against numerous other similarly situated debtor/consumers in the State of Texas after July 13, 2024.

7.      In the course of its debt collection activities after July 13, 2024, JM committed additional violations of the TDCA and the FDCPA, including contacting third parties about the debt without authorization of the Plaintiff, including Plaintiff's daughter.

8.      In addition, Defendant Matthew Clark, as JM's Texas Managing Attorney, directly misrepresented JM's bond status to Plaintiff's counsel in response to a demand letter asserting that JM was engaged in unlawful debt collection activities without a surety bond.

9.      Even after JM scrambled to post a bond on April 11, 2025—undoubtedly in response to Plaintiff's demand letter—Mr. Clark continued to hide the truth in direct communications with Plaintiff's counsel by falsely implying that JM had maintained continuous compliance during all relevant periods.  In truth, however, JM had remained unbonded from July

13, 2024 through April 11, 2025, nearly a nine month period, while continually engaging in collection activities in Texas during that time period.

10.    JM is liable under the TDCA for engaging in debt collection in the State of Texas without maintaining a surety bond.  JM's actions are also in violation of the FDCPA.

11.    Midland and Does 1-20 are each debt collectors as defined under the TDCA and the FDCPA, and are liable for their own violations of consumer protection laws, but they are also each liable for the actions of JM, who is their agent in all debt collection activities in Texas between July 13, 2024 and April 11, 2025, under agency principles.  Midland and Does 1-20, as debt buyers, are not relieved of their liability under the TDCA or the FDCPA merely because they employed JM as a third party to collect their debt.

12.    Defendant Clark, an attorney and an employee of JM acting as its Texas Managing Attorney, also qualifies individually as a debt collector under the TDCA and FDCPA, and as such he is also required to post a bond with the State of Texas.  On information and belief, Mr. Clark was not bonded between July 13, 2024 and April 11, 2025 (or at any time thereafter), during which time he personally participated in and/or oversaw the collection activities of JM in Texas, including the collection activities of JM against Plaintiff.

13.    Plaintiff and all putative class members have been damaged by these violations, including JM's failure to maintain a surety bond, and are entitled to compensation, as well as an injunction.

## II.  PARTIES

14.    Plaintiff Natalie Ray ("Plaintiff" or "Ms. Ray"), is an individual residing in Nueces County, Texas.

15.    Defendant Johnson Mark, LLC ("JM") is a Utah limited liability company with

principal offices situated at 4548 S. Atherton Dr., Suite 100, Salt Lake City, UT 84123, according to its most recent filing with the Utah Secretary of State.

16.     JM is an entity, which at all relevant times was engaged, by use of the mails, telephone, and court filings, in the business of attempting to collect consumer debts, as defined in 15 U.S.C. §1692a(5), including consumer debts that JM alleged were owed by Plaintiff and the absent class members.

17.     As such, JM is a consumer debt collector as defined under the Fair Credit Reporting Act, 15 U.S.C. §1692a(6) and the Texas Debt Collection Act, Texas Fin. Code §392.001(6).

18.     JM has represented plaintiffs in thousands of debt collection lawsuits filed in Texas in the year prior to the filing of this action.

19.     JM also has non-attorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts under Texas Fin. Code §392.001(7).

20.     As a debt collector, JM is required to obtain and file a surety bond with the Texas Secretary of State pursuant to Texas Fin. Code § 392.101.

21.     JM is registered to do business in Texas.

22.     JM may be served through its registered agent, Incorp Services, Inc. at 815 Brazos Street, Suite 500, Austin, TX 78701 in accordance with Texas law.

23.     Mathew Phillip "Matthew" Clark is an attorney licensed to practice law in Texas and holds himself out to be "Texas Managing Attorney" of JM. Mr. Clark is a debt collector for purposes of 15 U.S.C. §1692a(6) and Texas Fin. Code §392.001(6).

24.     Mr. Clark can be served personally at his place of business, 4548 S Atherton Dr Ste 100, Taylorsville, UT 84123-6778.

25.    Midland Credit Management, Inc. ("Midland"), is a Kansas Corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, California, 92123. Midland's registered agent for service of process in Texas is Corporate Service Company d/b/a CSC-Lawyers Incorporating Service Company, who can be served at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

26.    Midland is engaged in the business of purchasing allegedly defaulted consumer debts originally owed to others and incurred for personal, family, or household purposes.

27.    Midland is a debt collector for purposes of 15 U.S.C. §1692a(6) and Texas Fin. Code §392.001(6).

28.    As a debt collector, Midland is required to obtain and file a surety bond with the Texas Secretary of State pursuant to Texas Fin. Code  §392.101.

29.    Midland pays an average of less than ten cents on the dollar for the debts it purchases.

30.    Midland attempts to collect its purchased consumer debts through JM and JM's attorneys and non-attorney representatives who contact consumers via collection calls, emails, and mailed dunning correspondence, as well as through lawsuits JM files on behalf of Midland.

31.    Midland has been the plaintiff in hundreds of debt collection lawsuits filed on its behalf by JM in courts across Texas during the year prior to the filing of this action.

32.    Midland regularly uses the mails and telephones in the process of collecting the debts it purchases.

33.    On information and belief, Midland, through JM and JM's attorneys and non-attorney representatives, has collected thousands of dollars and obtained at least hundreds of judgments between July 13, 2024 and April 11, 2025.  On information and belief, unless restrained, Midland, through JM and JM's attorneys and non-attorney representatives, will continue to collect

judgments that they obtained between July 13, 2024 and April 11, 2025 when JM did not have a bond.

34.     Does 1-20 are corporate debt collector entities, similar to but distinct from Midland, that are engaged in the business of purchasing allegedly defaulted consumer debts originally owed to others and incurred for personal, family, or household purposes.

35.     Does 1-20 are debt collectors for purposes of 15 U.S.C. §1692a(6) and Texas Fin. Code §392.001(6).

36.     As debt collectors, Does 1-20 are required to obtain and file a surety bond with the Texas Secretary of State pursuant to Texas Fin. Code §392.101.

37.     Like Midland, Does 1-20 purchase consumer debt at greatly reduced prices.

38.     Does 1-20 attempt to collect its purchased consumer debts through JM and JM's representatives by contacting consumers via collection calls, emails, and mailed dunning correspondence, as well as through lawsuits JM files on behalf of Does 1-20.

39.     On information and belief, Does 1-20 have been the plaintiffs in hundreds of debt collection lawsuits filed on its behalf by JM in courts across Texas during the year prior to the filing of this action.

40.     Does 1-20 regularly use the mail and telephones in the process of collecting the debts they purchase.

41.     On information and belief, Does 1-20, through JM and JM's attorneys and non-attorney representatives, have collected thousands of dollars and obtained at least hundreds of judgments between July 13, 2024 and April 11, 2025.  On information and belief, unless restrained, Does 1-20, through JM and JM's attorneys and non-attorney representatives, will continue to collect on judgments that they obtained between July 13, 2024 and April 11, 2025 when JM did

not have a bond.

42.     On information and belief, JM has collected thousands of dollars and obtained at least hundreds of judgments on behalf of Defendant Midland and Defendants Does 1-20 between July 13, 2024 and April 11, 2025.   On information and belief, unless restrained, JM will continue to collect on judgments on behalf of Defendant Midland and Defendants Does 1-20 that JM obtained between July 13, 2024 and April 11, 2025 when JM did not have a bond.

## III.  JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367, and pursuant to 15 U.S.C § 1692k(d).

44.     This Court has general personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer general personal jurisdiction over Defendants. The assumption of personal jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

45.     Plaintiff's causes of action arise from or relate to the contacts of Defendants to the state of Texas, thereby conferring specific personal jurisdiction with respect to Defendants.

46.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district and Defendants regularly transact business in this district.

## IV.  FACTUAL ALLEGATIONS

47.     Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account ("Account").

48.     The Account is a debt owed or formerly owed to Comenity Capital Bank as a result

of an alleged loan resulting from the use of a Big Lots credit card, the funds from which were used for various personal effects, but not for any business or commercial purpose whatsoever.

49.    The account originated with an entity other than Defendant and allegedly went into default prior to being sold to Midland.

50.    The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and constitutes a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

51.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

52.    Upon information and belief, Midland purchased the Account, or otherwise obtained the right to collect it, after the Account went into default with the original creditor.

53.    Upon information and belief, Midland hired JM on or about December 5, 2024 to collect the Account.

54.    JM attempted collections directly from Plaintiff in order to make a profit.

55.    JM filed a debt collector surety bond on April 21, 2010 with the Texas Secretary of State.

56.    Per the Texas Secretary of State's searchable online debt collector database, JM's bond was cancelled as of July 13, 2024.

57.    During all relevant time periods herein, JM did not have a debt collector surety bond on file with the Texas Secretary of State.

58.    JM advertises on its website (www.portal.jmlaw.com/login) (last visited May 18, 2025):

> We are a law firm engaged in the practice of civil litigation focusing on debt collection and creditor rights….Our best-in-class work balances detailed attention to asset finding, skip tracing, and judgment enforcing, with broad collection campaigns and portfolio strategies….This is an attempt to collect a debt. Any

information will be used for that purpose.

59.    As will be described below, JM communicated with Plaintiff and sued her for the purpose of collecting a debt from her.

60.    The principal purpose of JM is the collection of debts, directly or indirectly, using the mail and telephone and any other means, including by filing collection lawsuits.

61.    JM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

62.    JM is a law firm that employs non-attorney staff who regularly make contact with debtors for the purpose of collection or adjustments of debts.

63.    In an attempt to collect the Account from Plaintiff, JM filed a lawsuit on behalf of Midland against Plaintiff on January 30, 2025 in Justice of the Peace 2-1 in Nueces County, Texas with a Case Number of 25DBC-0297-JP21.

64.    Upon information and belief, on February 26, 2025, JM emailed or directed an email containing the citation for the lawsuit to process server ABC Legal Services, LLC, a Washington limited liability company (the "JM Process Server"), to Plaintiff with the intention of having Plaintiff served with process.

65.    On at least two occasions in late February of 2025, the JM Process Server also contacted Ms. Ray's daughter by email in an attempt to serve process on Plaintiff of its debt collection lawsuit.

66.    On or about March 3, 2025, the JM Process Server made contact with a tenant residing at a property owned by Plaintiff. The tenant was not authorized to accept service on behalf

of Plaintiff. Plaintiff was notified by her tenant of the process server's attempt.

67.    On March 14, 2025, the JM Process Server attempted to physically serve process on Plaintiff.

68.    In addition, on March 14, 2025, the JM Process Server notified Plaintiff via email of its attempt to "deliver legal documents to [Plaintiff] at 05:51 PM…" at her residence.

69.    On March 18, 2025, JM filed a motion along with a proposed order seeking the Court's permission to serve Plaintiff via alternative service. The Court granted JM's motion on April 8, 2025.

70.    On March 21, 2025, the JM Process Server sent an email to Plaintiff "[w]e have legal documents that require delivery to you for a lawsuit filed in Nueces County, Texas."

71.    Plaintiff contacted Midland via the telephone regarding the JM Process Server's attempts and requested documentation regarding the Account. Midland's agent refused to provide any documentation and, instead, directed Plaintiff to JM as the "department" handling Plaintiff's Account.

72.    On March 31, 2025, Plaintiff initiated a phone call to JM to discuss the Account. During the phone call, Katherine Navato, a non-attorney agent of JM (the "JM Agent"), stated, "I am a debt collector attempting to collect a debt and any information can be used for that purpose." The JM Agent confirmed that JM was hired by Midland "to collect on this debt" and that JM is legal to collect in the State of Texas indicating that "[JM] wouldn't be collecting in Texas if it was not."

73.    On April 2, 2025, Plaintiff's counsel sent a demand letter to JM via certified and electronic mail, notifying the firm that it was "not bonded in Texas as is required of 3rd party debt collectors . . . ." The letter referenced JM's status as an unbonded third-party debt collector under

Texas Finance Code §§ 392.001(7) and 392.101, based on information obtained from the Texas Secretary of State's public database.

74.     On April 11, 2025, JM's Texas Managing Attorney, employee Mathew "Matthew" Phillip Clark, telephoned Plaintiff's counsel and claimed that JM was properly bonded in Texas and would provide documentation confirming its bonding status. Concerned that the Texas Secretary of State's public-facing database might be outdated or inaccurate, Plaintiff's counsel contacted the agency directly. A representative confirmed that JM's surety bond had been canceled as of July 13, 2024, and that no active bond was on file at the time the firm engaged in debt collection activity against Plaintiff, including the filing of a lawsuit.

75.     Plaintiff's counsel emailed Mr. Clark that same day memorializing his conversation with the Texas Secretary of State's representative. Approximately thirty minutes later, Mr. Clark sent an email to Plaintiff's counsel with a screenshot showing that JM's registration as a third-party debt collector had been approved by the Texas Secretary of State.

76.     The screenshot conveniently did not provide a date of registration, and Mr. Clark stated, "this is what I am seeing on my end," falsely implying that the registration approval screenshot reflected continuous compliance.

77.     Plaintiff's counsel confirmed via a telephone call with the same Texas Secretary of State representative as above that JM had filed a new registration that day (April 11, 2025).

78.     The reality is that JM had been unbonded for nearly nine months, during which time it filed suit against Plaintiff and undertook related collection activity. Mr. Clark's attempt to retroactively validate JM's noncompliant conduct by forwarding a same-day registration as evidence of ongoing compliance constitutes a misrepresentation of the firm's legal authority to collect debts in Texas.

---

**CLASS ACTION COMPLAINT**                                                                 **Page 11**

79.    As asserted below, Mr. Clark is a "debt collector" in his individual capacity as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) to the extent he personally directed and participated in collection activities in the State of Texas.

80.    Mr. Clark, as Texas Managing Attorney for JM, personally participated in the collection activities of JM in Texas as to all class members, and he personally participated in the collection activities of JM against Plaintiff as alleged herein.

81.    Per the Texas Secretary of State's searchable online debt collector database, it appears that Mr. Clark did not have a debt collector surety bond on file with the Texas Secretary of State during all relevant time periods herein.

82.    Despite JM's conduct described above, JM continued to pursue Plaintiff.

83.    On April 15, 2025, the JM Process Server attempted to physically serve process on Plaintiff.

84.    In addition, on April 15, 2025, the JM Process Server notified Plaintiff via email of its attempt to "deliver legal documents to [Plaintiff] at 10:57 AM…" at her residence.

85.    On April 16, 2025, the JM Process Server attempted to physically serve process on Plaintiff.

86.    In addition, on April 16, 2025, the JM Process Server notified Plaintiff via email of its attempt to "deliver legal documents to [Plaintiff] at 10:11 AM…" at her residence.

87.    All of the conduct by JM described above was done knowingly and willfully.

88.    JM's purpose for the communications with Plaintiff described above was to attempt to collect the Account.

89.    Each telephone call and each written correspondence individually conveyed information regarding the Account directly or indirectly to Plaintiff.

90.     The telephone call(s) and written correspondence(s) each individually constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

91.     The only reason JM and/or representative(s), employee(s) and/or agent(s) of JM participated in telephone call(s) with Plaintiff was to attempt to collect the Account.

92.     JM's filing of the lawsuit against Plaintiff during the time that it was not bonded constituted a "means" to collect or attempt to collect a debt pursuant to 15 U.S.C. § 1692f and Tex. Fin. Code § 392.304(19).

93.     The conduct of JM as described above was done knowingly and willfully and purposefully.

94.     All of the conduct of JM as described above was done without a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code §392.101.

95.     As a direct and proximate result of the aforesaid actions, Plaintiff suffered actual damages in the form of fear, anxiety, stress, mental anguish, depression and/or distraction from normal life, all or each of which manifested in physical form.

## IV.  CLASS ACTION ALLEGATIONS

96.     Because Defendants' wrongful conduct is widespread and uniform, Plaintiff would show the Court that this case should be certified for class action treatment pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (3).

97.     The class Plaintiff seeks to represent consists of all individuals in Texas to whom JM and/or the other named Defendants (1) made communications seeking to collect a consumer debt during the time period in which JM was not properly bonded with the State of Texas, (2) sued seeking to collect a consumer debt during the time period in which JM was not properly bonded with the State of Texas, (3) maintained any lawsuit seeking to collect a consumer debt if such

lawsuit was filed during the time period in which JM was not properly bonded with the State of Texas, (4) obtained a judgment on a consumer debt during the time period in which JM was not properly bonded with the State of Texas, (5) obtained a judgment on a consumer debt based on a lawsuit filed during the time period in which JM was not properly bonded with the State of Texas, or (5) collected on a judgment on a consumer debt based on any lawsuit filed during the time period in which JM was not properly bonded with the State of Texas.

98.    The class does not include the Judges of this Court, the Judges of the United States Courts of Appeals, or the Justices of the United States Supreme Court.

99.    The class is so numerous, with class members throughout Texas, that joinder of all class members is impracticable.  A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result.

100.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.  Plaintiff has been subjected to the identical misconduct as the members of the proposed class.  She seeks identical remedies for herself and the absent class members.

101.    Plaintiff will fairly and adequately protect the interests of all class members.  To that end, Plaintiff has retained capable counsel experienced in state and federal consumer law and consumer class-action litigation.  Neither Plaintiff nor her counsel have any conflicts that would interfere with the vigorous prosecution of this action.

102.    The questions of law and fact common to all class members which predominate over those pertaining to individual class members include, but are not limited to, whether Defendants engaged and engage in the policies and practices complained of and whether such

actions violate the TDCA and FDCPA provisions as alleged.

103.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy in that:

(a) the class necessarily consists of persons in unfavorable economic circumstances who are not able to pay to maintain individual actions against Defendants,

(b) many if not all class members lack the sophistication to recognize that Defendants' collection activities while unbonded are unlawful and to retain counsel,

(c) many class members have acceded or will accede to Defendants' unlawful conduct,

(d) there is no reason that the courts should be burdened with multiple lawsuits challenging Defendant's practices, and

(e) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

104.    Finally, Plaintiff would show the Court that Defendants, in pursuing the procedures challenged herein, have acted and refused to act on grounds generally applicable to the class as a whole.

## V.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE TEXAS DEBT COLLECTION
### ACT - TEX. FIN. CODE § 392.001, ET SEQ.
### (AS TO ALL DEFENDANTS)

105.    Plaintiff incorporates and re-alleges the allegation in the paragraphs above by this reference.

106.    Plaintiff is a consumer for purposes of the TDCA under Tex. Fin. Code § 392.001 *et seq*.

107.    The debt in question is a consumer debt for the purposes of the TDCA.

108.    JM is a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

109.    Midland is also a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

110.    Defendants JM and Midland are both debt collectors for purposes of the TDCA, because they are persons "who directly or indirectly engage[ ] in debt collection." Tex. Fin. Code Ann. § 392.001(6); *see also, Holt v Ocwen Loan Servicing, LLC*, 3:13-cv-120, 2013 WL 7211759, at *2 (S.D. Tex. December 12, 2013)(distinguishing between the more expansive definition of "debt collector" under TDCA § 392.001(6)).

111.    JM attempted to collect the debts of Plaintiff and other putative class members in the State of Texas without maintaining an active surety bond on file with the Texas Secretary of State, as required under Tex. Fin. Code Ann. § 392.101.

112.    Midland is responsible for the acts of JM as JM is Midland's agent and debt-collector.

113.    Does 1-20 are responsible for the acts of JM as JM is Does 1-20's agent and debt-collector.

114.    Defendant Clark is a debt collector for purposes of the TDCA, because he is a person "who directly or indirectly engage[ ] in debt collection." Tex. Fin. Code Ann. § 392.001(6). *See*, *Vasquez v. Great Lakes Processing Servs., LLC*, 2:18-cv-194, 2020 U.S. Dist. LEXIS 264303, *7-8 (S.D. Tex. April 21, 2020).

115.    As stated, Defendant Clark is the Texas Managing Attorney of JM who, on information and belief, was personally involved in the day to day collection efforts of JM, including collection efforts against Plaintiff and the class members.

116.    Because Mr. Clark is a debt collector, he is required to maintain a surety bond on his own behalf on file with the Texas Secretary of State, as required under Tex. Fin. Code Ann. § 392.101.

117.    On information and belief, Defendant Clark, as an individual debt collector and through his employer JM, participated in and directed attempts to collect the debts of Plaintiff and other putative class members in the State of Texas without maintaining an active, individual surety bond on his own behalf on file with the Texas Secretary of State, as required under Tex. Fin. Code Ann. § 392.101.

118.    A bond is required under Tex. Fin. Code Ann. § 392.101 to compensate any person who is damaged by a violation of the TDCA (Tex. Fin. Code Ann. § 392, *et seq.*), that is, to compensate consumers.

119.    Midland is also a debt collector who is liable under Tex. Fin. Code § 392.101, and it is also liable for the actions of JM, its agent pursuant to principal/agent relationship, in failing to obtain and maintain the surety bond required under the TDCA.

120.    Does 1-20 are debt collectors who are liable under Tex. Fin. Code § 392.101, and they are also liable for the actions of JM, their agent pursuant to principal/agent relationship, in failing to obtain and maintain the surety bond required under the TDCA.

121.    As a direct and proximate result of the aforesaid actions, Plaintiff suffered actual damages in the form of fear, anxiety, stress, mental anguish, depression and/or distraction from normal life, all or each of which manifested in physical form.

122.    As a direct and proximate result of the aforesaid actions, Plaintiff has incurred damages in the form of attorneys' fees and costs in combatting the illegal debt collection activities of Defendants.

123.    On information and belief, Defendants Midland, Does 1-20, Mr. Clark and JM have filed multiple lawsuits in an attempt to collect the debts of Plaintiff and the class members between July 13, 2024 and April 11, 2025 when JM and Defendant Clark did not have a surety bond.

124.    On information and belief, Defendants Midland, Does 1-20, Mr. Clark and JM continued to pursue multiple lawsuits in an attempt to collect the debts of Plaintiff and the class members between July 13, 2024 and April 11, 2025 when Defendants JM and Clark did not have a surety bond.

125.    On information and belief, Defendants Midland, Does 1-20, Mr. Clark and JM obtained judgments during the times when JM and Defendant Clark did not have a surety bond, or obtained judgments based on lawsuits filed and pursued during the times when JM and Defendant Clark did not have a surety bond.

126.    On information and belief, Defendants Midland, Does 1-20, Mr. Clark and JM collected thousands of dollars on judgments obtained between July 13, 2024 and April 11, 2025, or on judgments obtained on lawsuits filed between July 13, 2024 and April 11, 2025.

127.    Plaintiff and the class members are entitled to actual damages for Defendants' violation of the law.

128.    On information and belief, unless restrained, with respect to lawsuits Defendants filed between July 13, 2024 and April 11, 2025, when Defendants JM and Clark did not have a bond, Defendants will continue to pursue lawsuits, obtain judgments on such lawsuits, and collect on such judgments.

129.    On information and belief, unless restrained, Defendant Clark will continue collect debts, file lawsuits, pursue lawsuits, obtain judgments on such lawsuits, and collect on such judgments even though Defendant Clark does not have a surety bond as required under Tex. Fin.

Code Ann. § 392.101.

130.    Defendants' failure to comply with the requirements of a surety bond, and subsequent action to hide the fact that JM failed to maintain a surety bond, are the result of fraud, malice or gross negligence.

131.    Pursuant to § 392.403(a)(1) of the TDCA, Plaintiff and the class are entitled to an injunction against Defendants to prevent and restrain them from future violations of the TDCA, including but not limited to, enjoining Defendants from pursuing lawsuits against Plaintiff and other class members that were filed between July 13, 2024 and April 11, 2025, obtaining judgments on such lawsuits, and collecting on judgments obtained in such lawsuits.

132.    Pursuant to § 392.403(a)(2) of the TDCA, Plaintiff and the class are entitled to actual damages.

133.    Pursuant to § 392.403(e) of the TDCA, Plaintiff and the class are entitled to statutory damages.

134.    Pursuant to the Texas Debt Collection Act, Plaintiff and the class are entitled to punitive damages.

135.    Pursuant to §392.403(a)(1) and (2) and §392.403(b) of the Texas Debt Collection Act, Plaintiff and the class are entitled to recover reasonable attorneys' fees and costs for pursuing these claims against Defendants.

## COUNT II
## VIOLATION OF THE TEXAS DEBT COLLECTION ACT - TEX. FIN. CODE § 392.304
### (AS TO ALL DEFENDANTS)

136.    Plaintiff incorporates and re-alleges the allegation in the paragraphs above by this reference.

137.    As alleged above, Defendants violated § 392.101 by attempting to collect debts,

---

**CLASS ACTION COMPLAINT**                                                                 Page 19

including filing and pursuing lawsuits, even though Defendants JM and Clark did not have a valid surety bond. Without this legally required bond, the debt collection activities of JM, including phone calls, email correspondence, attempting to physically service notice, filing and pursuing lawsuits, were and are unauthorized and unlawful.

138.    As such, these debt collection activities constituted and constitute a "deceptive means to collect a debt" and thus violate Tex. Fin. Code § 392.304(19).

139.    Midland is also a debt collector and is liable under Tex. Fin. Code § 392.304(19), and it is also liable for the actions of JM and Clark, Midland's agents pursuant to principal/agent relationship.

140.    Does 1-20 are debt collectors and are liable under Tex. Fin. Code § 392.304(19), and they are also liable for the actions of JM and Clark, their agents pursuant to principal/agent relationship.

141.    Pursuant to § 392.403(a)(1) of the TDCA, Plaintiff and the class are entitled to an injunction against Defendants as described *supra* to prevent and restrain them from future violations of the TDCA.

142.    Pursuant to § 392.403(a)(2) of the TDCA, Plaintiff and the class are entitled to actual damages.

143.    Pursuant to § 392.403(e) of the TDCA, Plaintiff and the class are entitled to statutory damages.

144.    Pursuant to the Texas Debt Collection Act, Plaintiff and the class are entitled to punitive damages.

145.    Pursuant to §392.403(a)(1) and (2) and §392.403(b) of the Texas Debt Collection Act, Plaintiff and the class are entitled to recover reasonable attorneys' fees and costs for pursuing

these claims against Defendants.

### COUNT III
### VIOLATION OF THE FDCPA 15 U.S.C. § 1692 et seq., § 1692c(b)
### (AS TO DEFENDANTS JM, MIDLAND AND DOES 1-20)

146.    Plaintiff incorporates and re-alleges the allegations in the paragraphs above by this reference.

147.    Congress enacted the Fair Debt Collection Practices Act to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

148.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *Eastman v. Baker Recovery Services (In re Eastman)*, 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009); see also *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997). Because the FDCPA imposes strict liability, there is no requirement that the actions taken by a debt collector "be intentional or actionable." *Eastman*, 419 B.R. at 728.

149.    The FDCPA is also a remedial statute and therefore must be construed liberally in favor of the debtor. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013).

150.    Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3).

151.    The debt at issue was a consumer debt as contemplated in in 15 U.S.C. § 1692a(5).

152.    Defendant JM is a debt collector as defined in 15 U.S.C. § 1692a(6).

153.    Upon information and belief, JM obtained servicing rights to Plaintiff's account

when it was allegedly delinquent.

154.    In addition, Defendant JM was engaged in a business, the primary purpose of which is the collection of consumer debt as defined in 15 U.S.C. § 1692a.

155.    Defendant Midland, as a purchaser of allegedly defaulted consumer debts originally owed to others and incurred for personal, family, or household purposes, qualifies as a debt collector whose principal purpose is the collection of debts, as defined in 15 U.S.C. § 1692a(6), notwithstanding the fact that it hired JM to collect the alleged debt owed by Plaintiff.  See *Barbato v. Greystone Alliance, L.L.C.*, 2019 WL 847920 (3d Cir. Feb. 22, 2019).[1]

156.    Does 1-20 are also debt buyers whose primary purpose is the collection of consumer debt as defined in 15 U.S.C. § 1692a(6), and therefore they are debt collectors under the FDCPA.

157.    As debt collectors, Midland and Does 1-20 are each responsible for the acts of its agent, JM, and are jointly and severally liable for JM's violations of the FDCPA.

158.    Defendant JM violated 15 U.S.C. § 1692c(b) by communicating with one or more third parties without the prior consent of Plaintiff.

159.    The unlawful communications include direct communications by JM Process Server (as agent of JM) to Plaintiff's daughter as alleged herein, as well as communications by the JM Process Server, which was JM's agent, with a tenant residing at a property owned by Plaintiff on March 3, 2025.

160.    On information and belief, it is the common practice of JM to communicate with third parties in its efforts to collect debts in violation of 15 U.S.C. § 1692c(b), such that this behavior is typical and common to the class.

---

[1] *Rivas v. Midland Funding L.L.C.*, 398 F. Supp. 3d 1294, 1303 (S.D. Fla. 2019), *aff'd on other grounds*, 842 Fed. Appx. 483 (11th Cir. 2021). *See also Bradley v. Selip & Stylianou, L.L.P.*, 2018 WL 4958964, at *5 (W.D.N.Y. Oct. 15, 2018).

161.    As stated, Midland and Does 1-20 are liable for the acts of their agent, and therefore they are liable for every violation of  15 U.S.C. § 1692c(b) committed by JM in the collection of a debt owned by Midland and Does 1-20.

162.    Cognizable legal injury as a result of the Defendants' violation, including invasion of privacy, intrusion upon seclusion, humiliation, and embarrassment resulting in actual harm, including mental anguish and/or emotional distress.

163.    As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff and the class members have been damaged as alleged herein.

164.    Plaintiff and the class are entitled to actual damages caused by Defendants' violation of the FDCPA as provided in 15 U.S.C. § 1692k.

165.    Plaintiff and the class are entitled to statutory damages and attorneys' fees as provided in 15 U.S.C. § 1692k.

### COUNT IV
### VIOLATION OF THE FDCPA 15 U.S.C. § 1692f
### (AS TO ALL DEFENDANTS)

166.    Plaintiff incorporates and re-alleges the allegations in the paragraphs above by this reference.

167.    As alleged, Defendants Midland and Does 1-20 are also debt collectors whose principal purpose is the collection of debts, as defined in 15 U.S.C. § 1692a(6).

168.    As debt collectors, Defendants Midland and Does 1-20 are each responsible for the acts of their agents, JM and Clark, and are jointly and severally liable for JM's and Clark's violations of the FDCPA.

169.    JM and Clark violated 15 U.S.C. § 1692f generally by using an unfair means to collect or attempt to collect a debt by engaging in debt collection when Defendants JM and Clark

did not have the required surety bond.

170.    As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff and the class members have been damaged as alleged herein.

171.    Plaintiff and the class are entitled to actual damages caused by Defendants' violation of the FDCPA as provided in 15 U.S.C. § 1692k.

172.    Plaintiff and the class are entitled to statutory damages and attorneys' fees as provided in 15 U.S.C. § 1692k.

**COUNT V**
**VIOLATION OF THE FDCPA 15 U.S.C. § 1692e**
**(AS TO ALL DEFENDANTS)**

173.    Plaintiff incorporates and re-alleges the allegation in the paragraphs above by this reference.

174.    As alleged herein, all Defendants are debt collectors as defined in the FDCPA.

175.    In addition, Defendants Midland and Does 1-20 are liable for the acts of their agents, JM and Clark, and do not escape liability by retaining  third parties to collect their debts.

176.    Defendants violated 15 U.S.C. § 1692e generally, and 15 U.S.C. § 1692e(10) specifically, because collecting debts while Defendants JM and Clark did not maintain a surety bond was an unfair means of collecting a debt and also deceptively implied that such collection activity was legal. In addition, Defendants' continued prosecution of lawsuits they filed between July 13, 2024 and April 11, 2025, continued obtaining of judgments on such lawsuits, and collection of judgments on such lawsuits, are unlawful and deceptive means to collect debts because Defendants and their agents had no right to file such lawsuits in the first place, because they did not have a bond at the time.

177.    As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff

---

and the class have been damaged.

178.    Plaintiff and the class are entitled to actual damages caused by Defendants'
violation of the FDCPA as provided in 15 U.S.C. § 1692k.

179.    Plaintiff and the class are entitled to statutory damages and attorneys' fees as
provided in 15 U.S.C. § 1692k.

## DEMAND FOR JURY TRIAL

180.    Plaintiff and putative class members assert their right under the Seventh
Amendment to the United States Constitution and demand, in accordance with Fed. R. Civ. P. 38,
a jury trial on their claims against Defendants.

## PRAYER

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully
request that this Court, after trial by jury:

a)    Determine that this action may be maintained as a class action under Fed. R.
Civ. P. 23, that Plaintiff is a proper class representative, and that their counsel
is appointed Class Counsel;

b)    Award injunctive relief, actual damages, statutory damages, punitive damages,
exemplary damages and attorneys' fees and costs for Defendants' violations of
law; and

c)    Awarding such other relief as this Court may deem just and proper.

KELLETT & BARTHOLOW PLLC
/s/ *Karen L. Kellett*
Karen L. Kellett
Texas Bar No. 11199520
Theodore O. Bartholow, III ("Thad")
State Bar No. 24062602
Claude D. Smith
State Bar No. 24028778
11300 N. Central Expressway
Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
kkellett@kblawtx.com


THE BYWATERS LAW FIRM, PLLC
Ashton Hunter Bywaters, III ("Hunter")
State Bar No. 24122938
400 N. St. Paul Street, Suite 1420
Dallas, TX 75201
Tel: (214) 812-6805
hunter@bywaterslawfirm.com

**ATTORNEYS FOR PLAINTIFF**